**UNITED STATES**

v.

**Senior Airman Rita L. HUDSON, FR 035–40–3163, United States Air Force.**

**ACM 24568.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 July 1984.

Decided 2 April 1985.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Colonel Andrew J. Adams, Jr.

Before HODGSON, FORAY and MURDOCK, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

Notwithstanding her sworn denial of any drug involvement, the appellant was convicted of a single allegation of using cocaine. The sole evidence supporting her conviction is a urinalysis from the Center for Human Toxicology at the University of Utah. *See generally United States v. Frost*, 19 M.J. 509 (A.F.C.M.R.1984). Appellate defense counsel invite our attention to those errors assigned by the trial defense counsel in his response to the staff judge's advocate post trial advice. While we affirm the conviction, some discussion of the assigned errors is warranted.

### I

On 11 January 1984, the appellant took part in a random urinalysis testing procedure at Homestead Air Force Base, Florida. Six days later her specimen bottle, with seal intact, was received by the shipping and receiving section of the Drug Detection Laboratory, Brooks Air Force Base, Texas. This part of the laboratory is a controlled area with freezers for permanent storage, a walk-in refrigerator for holding specimens awaiting destruction and a temporary storage area. Approximately 15 persons have access to the permanent storage freezer.

When the specimen bottles are received at the laboratory the seals are checked for tampering. Occasionally a bottle will come in "wet", that is broken, or the top will come loose when the bottle is first handled. Additionally, there have been occasions when a urine sample has been lost. When a specimen bottle comes in "wet" or the top is loose, a notation is made on the accompanying document at that time. However, there was testimony that documentation was sometimes completed after the procedure or incident had occurred.

The original specimen bottles never leave the shipping and receiving area. When testing at Brooks is required, an "aliquot" * procedure is accomplished. This is basically a two person operation: one individual holds the original container and reads its identifying number. The other holds the new container and insures the new number matches the old. Only one specimen bottle is opened at a time. The urine sample needed for testing is transferred by pipette or by pouring from container to container.

On 28 March 1984, the appellant's urine was shipped to the Center for Human Toxicology at the University of Utah for testing. A subsequent test established that her urine contained benzoylecognine, a metabolite of cocaine. Once cocaine enters the body it metabolizes into two primary metabolites—benzoylecognine and methalecognine. Cocaine is the only substance that will metabolize into benzolylecognine.

### II

■ At trial the appellant moved to suppress her urine specimen and the resulting lab test, contending that a satisfactory chain of custody had not been established at the Brooks lab. She maintained that the large number of urine specimens i.e., 14,000 to 15,000 a month, plus an excessive number of persons i.e., 15 who had access to the area, together with "sloppy paperwork," made the documentation procedure faulty. Thus she contends the presumption that normally attends the records of a regularly conducted business activity is not available to the Government. Mil.R.Evid. 803(6).

The trial judge is given broad discretion in ruling on questions of admissibility in chain of custody matters. His ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. *United States v. Henley*, 9 M.J. 780 (A.F.C.M.R. 1980); *United States v. Ortiz*, 9 M.J. 523 (A.C.M.R.1980). The argument that opportunities existed to permit tampering with the evidence is not persuasive as the Government need not exclude all possible ways that the evidence could be changed or interfered with. *United States v. Bridges*, 499 F.2d 179 (7th Cir.1974). All that is

---

* An "aliquot" is a portion taken or poured off from the original specimen.

needed is the judge to be reasonably certain that the challenged exhibit has not been changed in an important aspect. *West v. United States,* 359 F.2d 50 (8th Cir.1966). The circumstances surrounding the preservation and custody of the appellant's urine permits a conclusion that it has not been tampered with in any significant manner. Any weak links in a chain of custody relate only to weight and not admissibility. *United States v. Shackleford,* 738 F.2d 776 (7th Cir.1984). The trial judge did not abuse his discretion in admitting the urine specimen and the lab test results. *United States v. Yarbough,* 50 C.M.R. 149 (A.F.C.M.R.1974).

### III

■ The appellant argues that the trial judge erred in denying her counsel's request for the production of personnel assigned to the Brooks lab who would testify as to the existence of "command influence" in the organization. The thrust of the defense position was that the lab procedures for drug testing at Brooks were faulty and could not be relied upon because of intense internal pressure i.e., "command influence" to shield the organization from outside criticism. Essentially, the defense sought to establish that the testing protocols at Brooks were unsound and any lab test conducted there which resulted in a positive finding for the presence of illicit drugs was invalid. The prosecution countered this argument by asserting that the validity of the testing procedures at Brooks was irrelevant as only the test results from the Center for Human Toxicology were going to be offered in evidence.

From arguments of counsel and offers of proof it would appear that allegations of "command influence" at the Brooks lab had been made in other trials. However, apparently in those situations the Brooks lab results were offered in evidence—a condition not present here. Trial defense counsel contend that since his client's urine specimen was received at the Brooks lab and stored there, any evidence as to "command influence" at that facility was rele-

vant notwithstanding that no test results from the lab were to be offered at trial.

It is within the trial judge's discretion whether the presence of a witness is required. *United States v. Phillips,* 15 M.J. 671 (A.F.C.M.R.1983). The factors the judge must weigh in addition to the question of relevancy are whether the proffered evidence would confuse the issues or mislead the members. A claim of "command influence" should have some direct relationship between the prohibited activity and the accused's trial. *Accord United States v. Lowery,* 18 M.J. 695 (A.F.C.M.R.1984). The expected testimony of a substantial number of witnesses the trial defense counsel wished produced touched mainly on the likelihood of false test results i.e., positive reaction for cocaine and marijuana being obtained by "command influence" in attempts to protect the lab's reputation. Interwoven in this expected testimony was the opinion by expert witnesses on behalf of the appellant that urine samples tested at the Brooks lab were invalid because of the improper forensic standards used there. All of this testimony would clearly be relevant *if* the Brooks test results had been given to the members, which they were not. It seems to us that assertions of "command influence" directed toward testing procedures not in issue have little relationship to a trial where the challenged lab results *are, not* offered. To allow such evidence creates a clear potential for confusing the ultimate issue and misleading the members in arriving at a verdict. The trial judge did not abuse his discretion in refusing to order the appearance of the requested witnesses. *See generally United States v. Hicks,* 7 M.J. 561 (A.F.C.M.R. 1979).

### IV

■ Trial defense counsel argued that the weight to be accorded the Utah test results amounted to less than proof beyond a reasonable doubt. He attacked the chain of custody, contending it provided many opportunities for his client's urine sample to be contaminated. He urged that the Utah lab only tested the specimen sent to them by Brooks and reminded them that

**610**

his client had denied under oath that she had ever used cocaine.

In opposition the prosecution asserted that cocaine is the only substance that produces the test results found by the Utah lab—dust and other substances will not do this. Trial counsel countered the argument that an unclean pipette used by the Brooks lab *might* have contaminated the urine while it was there by alluding to expert testimony that even if an unclean pipette was used in the aliquot procedure the chances of that resulting in a positive reaction of the scale found were "extremely small."

Proof beyond a reasonable doubt does not mean evidence free from conflict. *United States v. Steward*, 18 M.J. 506 (A.F.C.M.R.1984). In our opinion the evidence established the appellant's guilt beyond a reasonable doubt. Article 66(c), U.C.M.J., 10 U.S.C. § 866(c).

### V

The remaining assigned error is resolved against the appellant. *United States v. Scholz*, 19 M.J. 837 (N.M.C.M.R.1984). The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge and MURDOCK, Judge, concur.