**UNITED STATES, Appellee,**

v.

**Richard L. WHIPPLE, Jr., First Lieutenant, U.S. Air Force, Appellant.**

**No. 59,635.**

**ACM 25937.**

U.S. Court of Military Appeals.

July 13, 1989.

For Appellant: *Louis N. Hiken, Esq., Colonel Richard F. O'Hair, Captain Mark R. Land* (on brief); *Colonel Leo L. Sergi* and *Captain Henry J. Schweiter.*

For Appellee: *Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial convened with members at Beale Air Force Base, California. On conditional pleas of guilty, he was convicted of being absent without authority (three specifications); making false official statements (four specifications); and wrongful use of cocaine (one specification), in violation of Articles 86, 107, and 112a, Uniform Code of Military Justice, 10 USC §§ 886, 907, and 912a, respectively. The court members sentenced him to dismissal, 5 months' confinement, and forfeiture of $1200.00 pay per month for 5 months. The sentence was approved by the convening authority and affirmed in a short-form opinion by the Court of Military Review. We granted appellant's petition for review to consider whether the military judge properly refused to suppress the results of a urinalysis test.[1]

In early July 1986, appellant and a fellow officer began a cross-country training

---

1. The issues granted review were:

I

IF A SERVICEMAN IS ORDERED BY HIS COMMANDING OFFICER TO TAKE A FLIGHT PHYSICAL EXAMINATION, OF WHICH A URINALYSIS IS A MANDATORY PART, DOES A PURPORTED CONSENT TO THE URINALYSIS BY THE SERVICEMAN RENDER THE RESULTS ADMISSIBLE IN A COURT–MARTIAL?

II

IS CONSENT TO SUCH A URINALYSIS TO BE EVALUATED BY THE PROCEDURES FOR OB-

TAINING SUCH CONSENT BY THE EXAMINING SERVICE (THE NAVY IN THIS INSTANCE) OR BY THE DIRECTING SERVICE (THE AIR FORCE IN THIS INSTANCE)?

III

IS A URINALYSIS TEST ADMISSIBLE AGAINST A SERVICEMAN WHEN, AT THE TIME IT WAS TAKEN, THERE WAS NO "LEGAL OBSERVER" ASSIGNED FOR THAT PURPOSE?

flight. During this exercise, the aircraft developed maintenance problems. Upon landing at Dobbins Air Force Base, Georgia, during the late evening hours of July 3, appellant and his copilot elected to discontinue the mission for 48 hours. However, appellant failed to return to the base to resume the mission at the appointed time.

Approximately 1 hour after the scheduled departure time, appellant contacted his copilot and informed him that he had been in an automobile accident and was then at a hospital. This information was reported to appellant's squadron commander, Lieutenant Colonel Weaver, who was in California. Lieutenant Colonel Weaver consulted his staff judge advocates about the proper course of action to follow in this matter and thereafter decided to require a flight physical.

When he returned to Dobbins AFB, appellant was instructed to contact Lieutenant Colonel Weaver by telephone. During the ensuing conversation, Lieutenant Colonel Weaver told appellant that the reported accident had generated concern about his ability to fly and that he had determined that a flight physical was necessary. In addition, Lieutenant Colonel Weaver asked appellant to voluntarily provide a urine specimen. Appellant agreed to this procedure. To be sure that there was no misunderstanding, Lieutenant Colonel Weaver repeated the request, and appellant again assented.

At the time the conversation occurred, Lieutenant Colonel Weaver was not suspicious of appellant's conduct. He did not threaten appellant, and he did not imply that he would order an involuntary urinalysis.[2]

Appellant was examined by Lieutenant Commander Duckworth, a Navy Flight Surgeon,[3] who gave him a "flight mishap physical" examination.[4] Lieutenant Commander Duckworth testified that he asked appellant if he would "mind if ... [Duckworth] obtained some urine and blood specimens for some laboratory tests" or if appellant would "have any objections if we obtain some blood and urine samples for a laboratory test." Appellant agreed to the procedure without hesitation. The doctor stated that if appellant had not consented to the tests, he would *not* have ordered them. He also said that there was no doubt in his mind that appellant freely consented to the examination as a whole.

Lieutenant Commander Duckworth wanted the toxicology work because appellant's behavior had caused some concern. He had failed to promptly return to the base to continue the flight; had stated that he had been involved in an automobile accident; and had been flying hazardous cargoes in his normal duties. The latter factor raised a large question in Lieutenant Commander Duckworth's mind since some hazardous compounds had been reported to produce psychological changes in the persons exposed to them. Finally, in view of the purported automobile accident, Lieutenant Commander Duckworth needed to know if appellant had received any medications when he was treated at the civilian hospital.

Lieutenant Commander Duckworth categorically stated that he did not suspect appellant of substance abuse. In fact, he

2. Lieutenant Colonel Weaver testified that he had informed appellant he was required to take the physical examination because he had been in an accident. Since Air Force Regulations and Department of Defense Regulations require a physical examination under such circumstances, we do not interpret this as being a coercive statement. Rather, it was one of fact informing appellant of his status at the time.

3. The medical needs of persons stationed at Dobbins Air Force Base are served by a Navy medical clinic, which is subordinate to the Na-

val Hospital, Jacksonville, Florida, and is located on Dobbins AFB.

4. Ordinarily, such examinations are conducted when a servicemember is involved in an aircraft accident, either in flight or while on the ground. Lieutenant Commander Duckworth testified that he conducted this type of physical because the request had come from a command outside of the area normally served by the clinic; the request had come from a sister service; and because there "seem[ed] to be a lot of command interest in the physical."

was surprised when appellant's urine tested positive for metabolites of drugs.

■ Based upon the foregoing evidence the military judge found:

That there is clear and convincing evidence that Lieutenant Colonel Weaver informed the accused twice that he wished a urine sample be given voluntarily in conjunction with the physical.

Second: That the accused consented voluntarily to Lieutenant Colonel Weaver's request.

Third: There is no evidence of coercion, undue influence, or the accused's acquiescence to authority.

Four: The urine sample was not provided at command direction.

Five: The Navy regulations and instructions cited by the defense deal with the Navy urinalysis program and are not applicable to Air Force members or this fact pattern.

Six: The accused never attempted to withdraw his consent to provide the urine sample.

Seven: The evidence is admissible per Military Rule of Evidence 314(e), that being provided consensually by the accused.

Eight: There is no evidence to show that the accused believed that the urine sample was a part of the physical at the time he gave it. However, if so, he was doing so to determine his ability to fly, which is a valid medical purpose and the evidence would, in that case, be admissible per Military Rule of Evidence 312(f).

We agree that these findings are more than adequately supported by the evidence. Accordingly, this case is readily distinguishable from *United States v. White*, 27 MJ 264 (CMA 1988), where the commander provided the accused with a Hobson's choice: either give me a sample or I will order you to provide one. Lieutenant Colonel Weaver never intimated that he would order appellant to give a sample of his body fluids or that he had probable cause to give such an order. Thus, appellant's consent was not given under the mistaken impression that he had no legal choice in the matter. *Cf. Bumper v. North Carolina*, 391 U.S. 543, 548–50, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797, 802 (1968).[5]

■ Appellant also contends that the absence of a "legal observer" vitiates the results of the urinalysis. He points to the language of DOD Directive 1010.1 and Naval Hospital Jacksonville Instruction (NAVHOSPJAXINST) 6710.7A,[6] which require such an observer to monitor the taking of a servicemember's urine. In this case, a chief hospital corpsman administered the specimen collection process. However, the corpsman did not actually observe appellant providing the specimen, and he was not designated as a "legal observer."

We have recently held that minor deviations from regular procedures for the collection of urine samples do not render the results inadmissible *per se. United States v. Pollard*, 27 MJ 376 (CMA 1989). It is also well-settled that not every administrative regulation gives rise to rights which may be enforced in a criminal trial by the exclusionary rule. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *see also United States v. McGraner*, 13 MJ 408, 415–16 (CMA 1982).

A legal observer is present when a urine sample is taken to insure that individuals tested do not tamper with the sample or substitute some other substance for the urine. *Cf. Unger v. Ziemniak*, 27 MJ 349, 357 (CMA 1989). This is designed to protect the integrity of the testing process for the Government. Thus, the absence of a

---

5. As the case was tried and resolved on the theory that the urinalysis was consensual, we do not address here the lawfulness of the various service regulations or the impact that the recent decisions of the Supreme Court of the United States in *Skinner v. Railway Labor Executives' Assn.*, —— U.S. ——, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), and *National Treasury Employees Union v. Von Raab*, —— U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) may have on urinalysis testing of pilots, with or without cause.

6. *See* n. 3, *supra.*

legal observer does not render this result inadmissible.

In view of our conclusion that appellant consented to giving a urine sample, and considering the lack of any nexus between the absence of a "legal observer" at the testing and appellant's right to be protected from an unfair test, we hold that the military judge did not err in ruling to admit the results of the urinalysis at trial.

We need not decide whether regulations of a sister service (in this case, Chief of Naval Operations Instruction 5350.4) would preclude use of the results here. Appellant freely consented to give the urine sample and did not revoke the consent. The fact that the Navy has a more restrictive-use policy concerning test results is not in issue.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.