UNITED STATES

v.

**Technical Sergeant Fred HARGROVE, FR587–48–1073, United States Air Force.**

ACM 28778.

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 May 1990.

Decided 28 May 1991.

Appellate Counsel for the Appellant: Captain David D. Jividen (argued); Lieutenant Colonel Jeffrey R. Owens and Major Ronald G. Morgan (on brief).

Appellate Counsel for the United States: Captain Thomas E. Wand (argued); Colonel William R. Dugan, Jr., and Lieutenant Colonel Brenda J. Hollis (on brief).

Before LEONARD, RIVES and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

RIVES, Judge:

Many things can go wrong with the collection and testing of drug urinalysis samples. This appellant seeks reversal of his conviction because the government did not provide a witness to discuss something that could have gone wrong in his case. We disagree that the test for witness production includes a purely speculative scenario, and we affirm.

The facts here are similar to those in many other cases that involve a prosecution for the use of drugs: Technical Sergeant Fred Hargrove was randomly selected to provide a urine specimen for drug testing, the chain of custody was carefully maintained, proper laboratory procedures were followed, and the specimen tested positive for a metabolite of cocaine. No problems arose in the collection, chain of custody, or testing procedures.

Hargrove pleaded not guilty to a charge of using cocaine. He testified that he had never knowingly used any illegal drug. He said he was religious, athletic, and had a good military record. Several people, including senior Air Force officers, testified to his good military character. The positive urinalysis was the only evidence supporting his conviction.

After receiving proper instructions from the military judge, the members announced their findings of guilty.[1] Upon review of the entire record, we agree that guilt was proven beyond a reasonable doubt, as a matter of fact and law. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987); *United States v. Steward*, 18 M.J. 506 (C.M.A. 1984).

### Factual Background

The primary issue we face is whether the appellant was prejudiced when his repeated requests for a witness were denied. Prior to trial, the defense asked for Special Agent Shapiro, an investigator with the Air Force Office of Special Investigations (OSI). *See* R.C.M. 703(c)(2). Summarizing her expected testimony, the defense asserted that she had investigated allegations of tampering with urine samples at Andrews Air Force Base (AFB), Maryland. She experimented and was able to cut the tamper resistant tape that sealed a urine specimen bottle, open the bottle, and replace the cap in such a way as to make her tampering virtually undetectable. She could also sometimes remove the tape completely and replace it with new tape in such a way that the tampering could not be detected. The tape she used was the same kind of clear tamper resistant tape with red markings as was used to seal Hargrove's bottle. The same kind of bottle may also have been used, but her experiments bore no other similarities to this case.

The trial counsel refused to produce Shapiro, contending that her testimony would not be relevant under Mil.R.Evid. 402. The trial counsel maintained that the defense had shown no connection between Shapiro's

---

1. The appellant was convicted by a general court-martial composed of officer and enlisted members of one specification of using cocaine. Article 112a, UCMJ, 10 U.S.C. § 912a. The members' sentence of a bad conduct discharge, confinement for 3 months, and reduction to E-1 was approved by the convening authority.

experiments and Hargrove's case. Shapiro's investigation had been conducted more than 2 years before and involved possible improprieties at Andrews AFB. No tampering was suspected at either Scott AFB, Illinois (where Hargrove provided his urine specimen) or at Brooks AFB, Texas (where it was tested).

At trial, the defense renewed the request for Shapiro. *See* R.C.M. 703(c)(2)(D). The military judge noted there was no evidence of tampering with the tape or specimen bottle in this case. He determined that Shapiro's testimony would lead to speculation and could confuse or mislead the members. Finally, he ruled that Shapiro's testimony would not be material, and he denied the motion to compel her appearance as a witness.

### *Witness Production Generally*

■ Article 46, UCMJ, 10 U.S.C. § 846 provides the defense with "equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." The Manual for Courts–Martial implements this provision, setting out procedures for the defense to request witnesses through the trial counsel; disagreements are resolved by the military judge.[2] R.C.M. 703(c)(2); *see also* R.C.M. 905(j).

Before the 1984 Manual for Courts–Martial, the defense had to show the "materiality" of a requested witness. *See, e.g., United States v. Hampton,* 7 M.J. 284, 285 (C.M.A.1979); *United States v. Lucas,* 5 M.J. 167 (C.M.A.1978); *United States v. Marshall,* 3 M.J. 1047 (A.F.C.M.R.1977). "Materiality," however, is a vague term; Judge Cook suggested that "the true test is essentiality. If a witness is essential for the presentation of the prosecution's case, he will be present or the case will fail. The defense has a similar right." *United*

*States v. Bennett,* 12 M.J. 463, 465 n. 4 (C.M.A.1982).

### *Necessity*

■ The current standard is contained in R.C.M. 703(b)(1): "Each party is entitled to the production of any witness whose testimony on a matter in issue on the merits or on an interlocutory question would be *relevant and necessary.*" (Emphasis added.) The discussion to that rule provides that "[r]elevant testimony is necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way *on a matter in issue.*" (Emphasis added.) This becomes the dispositive point.

The purpose of the tamper resistant[3] tape is to help assure a good chain of custody. It is not an essential part of the chain; in fact, the government is under no obligation to use *any* tape. The government is required to prove by credible evidence that the specimen that was tested was the same, uncontaminated specimen Hargrove had provided. *See United States v. Whipple,* 28 M.J. 314 (C.M.A. 1989); *United States v. Pollard,* 27 M.J. 376 (C.M.A.1989); *United States v. Courts,* 9 M.J. 285, 290–92 (C.M.A.1980). This Court has observed: "The argument that opportunities existed to permit tampering with the evidence is not persuasive as the Government need not exclude all possible ways that the evidence could be changed or interfered with." *United States v. Hudson,* 20 M.J. 607, 608. (A.F.C.M.R.1985), *pet. denied,* 21 M.J. 32 (C.M.A.1985).

Special Agent Shapiro was not a necessary witness because she would not have testified on a matter in issue. The procedures in this case were routine and undisputed. The government used tamper resistant tape to seal the urine specimen bot-

---

**2.** The military judge, of course, is given discretion to decide issues of witness production. *United States v. Roberts,* 10 M.J. 308 (C.M.A. 1981); *United States v. Phillips,* 15 M.J. 671 (A.F.C.M.R.1983).

**3.** Counsel in this case, at both the trial and appellate levels, seek to distinguish between tamper *resistant* and tamper *proof* as descriptive

terms. Arguably, "tamper resistant" merely implies some impediment to undetectable tampering, while "tamper proof" connotes a higher level of protection that would preclude tampering without detection. We conclude that the semantic battle is not worth fighting, as the distinction between the terms is academic for purposes of this decision.

tle at the place of collection. If the bottle had shown signs of tampering when it was received at the laboratory, the specimen would not have been tested. No evidence in this case would lead to an inference that tampering had occurred. While Shapiro would say a specimen *could* be contaminated without leaving detectable signs of tampering, that possibility was not a matter in issue. Under the circumstances, such testimony would merely confuse the issues or mislead the members. Mil.R. Evid. 403; *Hudson, supra,* 20 M.J. at 609. The appellant was not denied a fair trial when she was not produced as a witness on the defense request.[4] *See United States v. Daniels,* 23 U.S.C.M.A. 94, 96, 48 C.M.R. 655, 657 (1974); *United States v. Jouan,* 3 M.J. 136 (C.M.A.1977).

### Relevance

■ The same process leads to the same result under an analysis of relevance. "Relevant evidence" is broadly defined in Mil.R.Evid. 401 as "evidence having any tendency to make the existence of any fact that is *of consequence to the determination of the action* more probable or less probable than it would be without the evidence." (Emphasis added.) Relevance is both a rule of admissibility, Mil.R.Evid. 402, and a criterion for witness production, R.C.M. 703(b)(1).

The defense uses a kind of Res Ipsa Loquitur argument to support the request for Special Agent Shapiro, urging that the positive urinalysis itself could somehow provide evidence of tampering. A witness production request, however, requires more than a suppositional "could have" or "might be" justification. To get the abstract issue into the present controversy, the defense must cross the threshold with some evidence tending to show that what could have or might have happened *did* happen, *in this case. Compare* S. Saltz-

burg, L. Schinasi & D. Schlueter, *Military Rules of Evidence Manual,* at 334 (2d ed. 1986) (to be relevant, the issue must be fairly raised in the case) *and* D. Schlueter, *Military Criminal Justice* § 11–2(A)(1) (2d ed. 1987) (a witness need not be produced when the testimony would not affect the outcome of the case). Here, no hint of tampering was shown either in the witness request or later at trial; thus, the "relevance and necessity" of the proposed testimony was not established. *See* R.C.M. 703(c)(2)(B)(i).

Shapiro knew nothing about Hargrove's drug use or the collection, handling, and testing of his urine. She had investigated allegations of tampering at Andrews AFB; there was no evidence of tampering at Scott AFB. Her testimony would not provide rebuttal to the prosecution's case, because the government did not have to exclude all possibilities of tampering.

We determine that Special Agent Shapiro's appearance was not "relevant" under Mil.R.Evid. 401, because the abstract possibility of tampering with the tape in an undetectable manner was of no consequence in Hargrove's court-martial. Shapiro's testimony would only relate to a collateral matter that was not really in dispute. The military judge did not abuse his discretion in denying the defense motion for her production as a witness. *United States v. Tangpuz,* 5 M.J. 426, 429 (C.M.A.1978); *United States v. Minaya,* 30 M.J. 1179, 1180–81 (A.F.C.M.R.1990).

The additional issues raised by the appellant lack merit. *See United States v. Williams,* 3 M.J. 239, 243 (C.M.A.1977); *United States v. Payne,* 12 U.S.C.M.A. 455, 462, 31 C.M.R. 41, 48 (1961). Having examined the record of trial, the assignment of errors and the government's reply thereto, we conclude that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the

---

4. Additionally, there was no "reasonable likelihood" that Shapiro's testimony would have affected the court's judgment. *United States v. Hampton,* 7 M.J. 284, 285 (C.M.A.1979); *United States v. Palmer,* 16 M.J. 501 (A.F.C.M.R.1983). We note that even without her as a witness, the defense was able to bring out the information

she would have discussed. Through cross-examination of a prosecution witness, the defense established that "there have been OSI investigations" that showed the tape could be tampered with in an undetectable manner. The point was reiterated in the defense counsel's findings argument.

substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge LEONARD and Judge JAMES concur.