**UNITED STATES, Appellee,**

v.

**Darrick B. LEIKER, Airman First Class, U.S. Air Force, Appellant.**

No. 68,050.
CMR No. 28899.

U.S. Court of Military Appeals.

Argued April 8, 1993.

Decided Sept. 10, 1993.

For Appellant: *Captain Gilbert J. Andia, Jr.* (argued); *Colonel Terry J. Woodhouse* (on brief); *Major Alice M. Kottmyer* and *Captain Richard W. Aldrich.*

For Appellee: *Captain Carlos L. McDade* (argued); *Colonel Richard L. Purdon* and *Lieutenant Colonel Jeffery T. Infelise* (on brief); *Major John H. Kongable, Major Ann M. Mittermeyer, Major Jeffrey C. Lindquist, Major Paul H. Blackwell, Jr., Karen L. Davis,* Legal Intern.

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was convicted by general court-martial of vandalizing military property and conspiracy, in violation of Articles 108 and 81, Uniform Code of Military Justice, 10 USC §§ 908 and 881, respectively. He was sentenced to a bad-conduct discharge, 10 months' confinement, a partial forfeiture, and reduction to the lowest enlisted grade. The convening authority reduced the confinement and forfeitures but otherwise approved the sentence as ad-

judged. The Court of Military Review affirmed the findings and sentence. We granted review on the following issue: *

WHETHER THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S REQUEST FOR COMPELLED TESTIMONY.

For the reasons discussed herein we hold there was no error and affirm the decision of the Court of Military Review.

## FACTS

During an investigation into a series of break-ins and acts of vandalism, agents of the Air Force Office of Special Investigations (OSI) found physical evidence consisting of three Vantage cigarette butts, two sets of footprints, and several empty beer cans. They also learned that a phone call had been made from one of the crime scenes to appellant's home.

Thereafter, they asked appellant, a security policeman, to report to the OSI office for questioning as a possible witness who could identify the person who had placed the phone call. Appellant was not initially advised of his rights under Article 31(b), UCMJ, 10 USC § 831(b).

During questioning by Special Agent Charles F. Roseberry, Jr., and Special Agent Gregg Fina, appellant revealed that he was out in the early morning with Staff Sergeant Mark A. Waldschmidt, who smoked Vantage cigarettes. Realizing appellant might be involved in the crimes, Agent Roseberry read him his rights, and the interview terminated after appellant invoked his rights.

Prior to entry of his pleas, appellant moved to suppress his initial statements to Special Agent Roseberry. The basis for the motion was that appellant's statement was obtained in violation of Article 31(b). The motion was denied.

At the suppression hearing appellant contended that Special Agent Roseberry "believed or reasonably should have believed" appellant to be a suspect prior to the rights warning. *United States v. Morris*, 13 MJ 297, 298 (CMA 1982), citing *United States v. Anglin*, 18 USCMA 520, 523–24, 40 CMR 232, 235–36 (1969). Special Agent Roseberry testified that he did not consider appellant a suspect at the time of the first interview.

Appellant urges that a close examination of the interview techniques used by Special Agent Roseberry reveals appellant was treated and questioned as a suspect and not as a witness. In effect, appellant argues that Special Agent Roseberry's actions speak louder than words in showing appellant's actual status at this interview. Specifically, appellant points to two techniques allegedly used by Special Agent Roseberry: questioning regarding nervousness and use of a good guy/bad guy technique. Appellant argues before this Court that the military judge erred by not compelling Special Agent Roseberry to answer defense counsel's questions regarding use of these techniques in questioning appellant.

## DISCUSSION

■ The defense has the constitutional right to introduce relevant and reliable evidence. In *United States v. Hayes*, 36 MJ 361, 362 (CMA 1993), this Court stated:

The Compulsory Process Clause, *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and the Due Process Clause, *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), provide criminal defendants the right to introduce evidence and the right to examine defense witnesses at trial to allow "the jury ... [to] decide where the truth lies." *See Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct.1920, 1923, 18 L.Ed.2d 1019 (1967). The extent of the right to present defense evidence

---

* We also granted review on the tenure and Appointments Clause issues. Since the grant of review in this case, this Court held against appellant's position on both issues in *United States v. Graf*, 35 MJ 450 (CMA 1992), *cert. granted sub nom. Weiss v. United States, infra,* and *United States v. Carpenter*, 37 MJ 291 (CMA 1993), respectively. *See also United States v. Weiss*, 36 MJ 224 (CMA 1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993).

is unsettled. *Cf. Pennsylvania v. Ritchie,* 480 U.S. at 56, 107 S.Ct. at 1000.

It is logically relevant to ask an agent what techniques were used to determine whether the individual was a suspect and whether there was a voluntary statement. The texts and the manuals used by law enforcement agencies list numerous techniques that might be employed to obtain confessions. *See, e.g.,* F. Inbau & J. Reid, *Criminal Interrogation and Confessions* (1962), cited in *Miranda v. Arizona,* 384 U.S. 436, 452, 86 S.Ct. 1602, 1616, 16 L.Ed.2d 694 (1966). One of the techniques specifically mentioned in *Miranda* is the "friendly/unfriendly" or the "Mutt and Jeff" act. *Miranda v. Arizona, supra* at 452, 86 S.Ct. 1616. The *Miranda* rules were issued to counter-balance the psychological ploys used by police officials to obtain confessions.

█ An accused has the right to present evidence at trial about what interrogation techniques were used in order to prove that he was questioned as a suspect rather than as a witness or to establish involuntariness of a statement. *See Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (excluding testimony concerning taking of the confession violated defendant's Sixth Amendment rights). Theoretically, at least, techniques used to wear down resistance and to obtain confessions, would not be used by law enforcement agents unless questioning suspects.

However, in this case the questions regarding use of techniques for which appellant sought to compel answers were in fact answered by Special Agent Roseberry during his cross-examination. As to the questioning of appellant regarding his nervousness, the cross-examination of Special Agent Roseberry was as follows:

Q: Isn't it true that one of the things you said to him is, "You haven't done anything wrong. Why are you nervous?"

A: Yes.

Q: Isn't that one of the common techniques that OSI use when they believe that they have someone who's hiding and covering up? Isn't that one of the questions that you are taught to ask?

A: I cannot divulge techniques of the OSI.

Q: Isn't that one of the questions that you are taught to ask when you're interrogating a suspect?

A: No, not really.

Q: Isn't going on the nervousness, seeing the nervousness, pouncing on the nervousness, trying to exploit that to overcome the will, isn't that one of the techniques that you're taught?

A: He was not a suspect. He was a witness who was nervous.

Q: When you see nervousness, isn't it true that as an OSI agent, you are taught to exploit that nervousness and go in and try to get answers out of them?

A: You try to get them to give you answers, yes, but I was not trying to exploit him.

Q: And isn't it true that when you say, "You haven't done anything wrong. Why are you nervous?", that's nothing more than technique to get an admission out of an individual?

A: I was trying to get a response....

\* \* \*

Q: Now listen to my question. Isn't it true that one of the techniques that OSI use to get admissions from people is saying to them, "You haven't done anything wrong. Why are you nervous?"

A: I'm not calling it a technique. You are calling it a technique. It is not a technique of the OSI.

Q: Isn't that one of the things that you're taught?

A: I used that particular phrase to solicit a response from Airman Leiker. He was nervous. I was trying to calm him down.

Also, as to the good guy/bad guy technique, Mr. Roseberry testified that he would not refer to it as a technique but testified he "did not" use such a tactic. The questioning was as follows:

Q: Isn't it true that one of the techniques that as an OSI agent you are taught to use to elicit admissions is a good guy/bad guy technique?

A: I will not discuss techniques.

MJ: I don't even really see the relevancy of that, counsel.

DC: It shows whether or not he's considered a suspect. He's made lots of statements that say that he's not considering him a suspect, but the techniques that they use in questioning an individual show whether, in fact, they are considering, maybe subconsciously, the person to be a witness. They don't use the good guy/bad guy technique....

MJ: I don't think the witness has testified that that's a technique used in any particular way.

DC: Well he's refused to comment on techniques. That's what I would like to have you....

MJ: No, I won't allow that question. I won't require that be answered.

Q: Didn't you try this good guy/bad guy to get him to make statements?

A: Again, you're asking for me to solicit and answer technique.

MJ: Now I'll allow that question. You can answer that question. Did you use this technique?

A: No, we did not.

■ The techniques used to interrogate appellant were relevant to determine whether his statement was voluntary and whether he was a suspect at the time of questioning. Information about interrogation techniques in general may have some relevance, but upon objection, counsel must make a proffer as to the relevance of general techniques to appellant. Mil.R.Evid. 103(a)(2), Manual for Courts-Martial, United States, 1984. Based on the proffer, the military judge can weigh the probative value against the possibility of undue delay or a waste of time. Mil.R.Evid. 403.

■ In this case the military judge required the OSI agent to answer questions about techniques actually used to interrogate appellant. He declined to compel the agent to provide marginally relevant information about general interrogation techniques. We hold that the military judge did not abuse his discretion by limiting questioning to those techniques used to interrogate appellant.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.