UNITED STATES

v.

**Staff Sergeant Ronald E. SHOVER Jr., FR139–60–3883, United States Air Force.**

ACM 30728.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 13 Jan. 1993.

Decided 9 June 1995.

Appellate Counsel for Appellant: Colonel Jay L. Cohen, Captain Eric N. Eklund, and Captain Robert K. Coit.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise.

Before DIXON, YOUNG, and GAMBOA, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Senior Judge:

Contrary to his pleas, appellant was convicted of wrongfully using methamphetamine. Article 112a, UCMJ, 10 U.S.C. § 912a (1988). Court members sentenced him to a bad-conduct discharge, confinement for 4 months, and reduction to E–1. Appellant alleges the military judge erred by (1) failing to suppress urinalysis results, and (2) excluding defense evidence. Finding no error, we affirm.

### I. The Inspection Urinalysis

#### A. Facts

An agent of the Air Force Office of Special Investigations (AFOSI) received an anonymous telephone call alleging that the officer-in-charge of the military personnel flight, Captain A, was dealing drugs on base. A few days later, Captain A reported to AFOSI that she found marijuana in her briefcase. After Captain A passed a polygraph examination, the investigation shifted to locating the individual who had planted the marijuana in her briefcase. The AFOSI agents interviewed individuals who worked with Captain A and may have had access to her briefcase. The agents focused their investigation on two military members and one civilian who were believed to have motive to cause the captain problems. The deputy staff judge advocate asked one of the AFOSI agents if he thought a urinalysis sweep might be helpful. The agent doubted it would help his investigation, but thought it would not be a bad idea since it was obvious that personnel in the organization had access to drugs.

At the suggestion of "the Judge Advocate's office," Lieutenant Colonel Schell, the acting commander, ordered a urinalysis sweep of all military personnel who worked in the same building as Captain A. Colonel Schell testified that, although he was interested in discovering who had planted the drugs in Captain A's briefcase, his primary reason for approving the urinalysis sweep was to end the finger-pointing, distrust, and tension the incident had caused in the unit. He "felt that it was probably in the best interest of those individuals for the good order and discipline of that particular organization."

Colonel Schell was not aware that AFOSI had targeted any particular persons in their investigation. Apparently all persons present for duty at the building on the day of the inspection provided urine specimens. Appellant was not assigned to Captain A's staff, but worked in the same building. Although appellant was not one of the three individuals believed to have a motive to plant the marijuana, his was the sole specimen to test positive for any drugs of abuse.

### B. The Law

■ Command may constitutionally require military members to submit urine specimens for drug testing as part of a valid military inspection without any showing of probable cause or individualized suspicion. *United States v. Bickel,* 30 M.J. 277, 285 (C.M.A.1990); *accord United States v. Gardner,* 41 M.J. 189, 190 (C.M.A.1994). An inspection is

an examination of the whole or part of a unit ... conducted as an incident of command the primary purpose of which is to ... ensure the security, military fitness, or good order and discipline of the unit.... An inspection also includes an examination to locate ... contraband. An order to produce body fluids, such as urine, is permissible in accordance with this rule. An examination made for the primary purpose of obtaining evidence for use in a trial by court-martial or other disciplinary proceedings is not an inspection within the meaning of this rule.

Mil.R.Evid. 313(b). Since the avowed purpose of the inspection was to detect drug use, and the inspection immediately followed a report of a specific offense, the prosecution had the burden of proving by clear and convincing evidence that the examination was an inspection within the meaning of Mil.R.Evid. 313 and not a subterfuge for a search. The military judge's finding regarding the 'primary purpose' is a matter of fact, which we will not disturb unless clearly erroneous. *Gardner,* 41 M.J. at 191 (citing *United States v. Barnett,* 18 M.J. 166, 171 (C.M.A.1984). Whether the examination is a valid inspection, however, is a matter of law which this

Court will review de novo. *Gardner,* 41 M.J. at 191.

### C. Discussion

■ We believe the evidence of record fully supports the military judge's finding that the primary purpose for the inspection was not for prosecution. However, even if we disagreed with the military judge's finding, we would not find his ruling to be clearly erroneous. Colonel Schell had information from which he could reasonably conclude that someone who worked with Captain A planted marijuana in her briefcase in an effort to discredit her. His order to conduct the urinalysis sweep was clearly motivated by a need to end the speculation and recrimination caused by this event. Unit cohesiveness is an important element in the fitness and good order and discipline of a unit. We believe Colonel Schell would have been derelict in his duties had he not taken immediate steps to end the speculation and divisiveness over this issue. The fact that he may have had as a secondary purpose seeking evidence of a crime does not render the results of an otherwise valid inspection inadmissible. *Id.* After reviewing the evidence, we are also convinced the prosecution met its burden of proving by clear and convincing evidence that the urinalysis test results were the product of a valid inspection, and, therefore, admissible. This was not a subterfuge search.

### II. Exclusion of Defense Evidence

Appellant alleges the military judge abused his discretion by refusing to permit him to present evidence to the members that someone planted marijuana in the captain's briefcase. We note that appellate defense counsel failed to provide this Court with any citation to legal authority to support this assignment of error.

■ A military accused has the right to present relevant evidence at trial. *United States v. Woolheater,* 40 M.J. 170, 173 (C.M.A.1994). "While the Constitutional right to present defense evidence is a 'fundamental' right, *Chambers v. Mississippi,* [410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)], it is not absolute...." *Woolheater,* 40 M.J. at 173. The "fundamental" right

may have to yield to procedural and evidentiary rules to control the presentation of evidence which are "designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers,* 410 U.S. at 295, 93 S.Ct. at 1046; *accord Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Mil.R.Evid. 403 is such a rule; a military judge may exclude relevant defense evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See United States v. Leiker,* 37 M.J. 418, 421 (C.M.A.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994).

■ In her opening statement, the defense counsel told the members that the urinalysis test occurred because someone put marijuana in Captain A's briefcase in the personnel office. She followed with a broad attack on the entire urinalysis program—failure of collection personnel to follow proper procedures and problems with the chain of custody. The defense counsel also told the members that appellant was taking medications for a cold when he provided the specimen, and that he used coffee and sugar from a community supply at work, which could have resulted in unknowing ingestion. The defense cross-examination of the government's urinalysis expert focused on the solubility of methamphetamine in liquid and the inability of a urinalysis test to determine how methamphetamine was ingested.

The first defense witness testified that he had accompanied appellant to the hospital to provide the urine specimen, and appellant did not appear to be nervous. The trial counsel then objected to the relevance of a portion of the testimony of an AFOSI agent the defense intended to call. The defense wanted the agent to testify that the AFOSI was conducting an investigation to determine who planted marijuana in Captain A's briefcase, and that the investigation was the basis for the urinalysis sweep. The defense claimed this information was relevant to show that the person who planted the marijuana on the captain might have placed methamphetamine in the office coffee or sweetener supply without appellant's knowledge.

■ The military judge sustained the trial counsel's objection, suggesting the evidence was irrelevant, and opining that any marginal relevance the evidence might have was substantially outweighed by its potential for confusion of the issues and waste of time. The decision to prevent a defense witness from testifying presents an issue of constitutional dimension which we will review de novo. *See United States v. Stombaugh,* 40 M.J. 208, 212 (C.M.A.1994).

The special agent did testify for the defense that methamphetamine was readily available in the local area and very inexpensive. Appellant testified that he did not knowingly use methamphetamine, that he was taking medication for a head cold when he provided the urine specimen, and that he drank coffee every day which came from a community coffee pot. He also stated that, on occasion, he would use open packets of a creamer and sweetener, from the community coffee table, in his coffee.

The first question we must address is whether this evidence was relevant. Does it have any tendency to make a matter in issue—whether appellant may have unknowingly ingested the methamphetamine—more or less likely? Appellant, as the proponent of the evidence, had the burden of (1) describing the evidence, (2) explaining its nexus to the consequential issue at bar, and (3) indicating how the offered evidence would establish the fact in question. S. Saltzburg, L. Schinasi & D. Schlueter, *Military Rules of Evidence Manual* 422 (3d ed. 1991).

The fact that someone planted marijuana in Captain A's briefcase is not, in and of itself, relevant to appellant's theory that someone may have placed methamphetamine in the communal coffee, creamer, or sweetener. Appellant had the burden of establishing the nexus between someone planting marijuana in Captain A's briefcase and his theory that someone may have placed methamphetamine in the communal coffee or sweetener. He failed to do so.

The defense offer of proof is sketchy at best. Appellant and Captain A worked in

the same building, but apparently in different sections—appellant in the accounting and finance office, Captain A in the military personnel flight. Appellant failed to show whether they worked in the same area of the building, where the coffee pot was located, or whether the same people who had access to Captain A's briefcase had access to the coffee pot appellant used. Furthermore, there are substantial differences between the proposed testimony and appellant's case. It appears that someone deliberately targeted Captain A by placing marijuana in her briefcase and then reporting it to the AFOSI. There is no suggestion that appellant was so targeted. Appellant's theory instead suggests that someone may have placed a different drug, methamphetamine, in a communal food source, which was used by many individuals. There was no evidence that someone called a law enforcement agency to "report" appellant's use. Furthermore, although others who used the same communal food source were required to provide urine specimens, none of their specimens revealed the presence of any illegal substances, including methamphetamine. Under these circumstances, we find appellant failed to establish the required nexus between this evidence and his unknowing ingestion theory—"that what could have or might have happened *did* happen, *in this case*." *United States v. Hargrove*, 33 M.J. 515, 518 (A.F.C.M.R.1991).

▬ Even if we had concluded the military judge erred, we would still have to find prejudice before reversing appellant's conviction. Article 59(a), UCMJ, 10 U.S.C. § 859(a). "Not every exclusion of material evidence is *per se* reversible error." *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A.1985); *accord United States v. Banks*, 36 M.J. 150, 170 (C.M.A.1992). In determining prejudice, we must compare the whole record to the evidence excluded by weighing "the relative strength of the Government's case against 'the defense's theory of the case'; 'the materiality' of the evidence; and 'the quality' of the excluded evidence." *Banks*, 36 M.J. at 170. Although this was a contested case in which appellant took the stand and denied his guilt, we believe the defense theory that someone spiked the communal coffee or the condiments to be implausible. After all, no one else's specimen tested positive for the presence of methamphetamine metabolites. Furthermore, the exclusion of this testimony did not prevent appellant from raising the possibility of unknowing ingestion in his testimony. We are convinced that even if the military judge erred, no prejudice resulted.

### III. Conclusion

The findings and sentence are correct in law and fact, and we find no errors prejudicial to appellant's substantial rights. Accordingly, the findings and sentence are

AFFIRMED.

GAMBOA, J., concurs.

DIXON, Chief Judge (dissenting):

I disagree with my colleagues that the urinalysis which precipitated the charges against appellant was a valid inspection within the meaning of Mil.R.Evid. 313. In my opinion, the evidence obtained from the urinalysis should have been suppressed. Accordingly, I would set aside the findings and sentence and order the charges to be dismissed.

The right of a commander to require military members to submit urine samples for drug testing as part of a valid military inspection without any showing of probable cause or individualized suspicion is well established. *United States v. Bickel*, 30 M.J. 277, 285 (C.M.A.1990). According to Mil.R.Evid. 313(b), an "inspection" is an examination of the whole or part of a unit, organization, installation, vessel, aircraft or vehicle, conducted as an incident of command, the primary purpose of which is to determine and ensure the security, military fitness, or good order and discipline of the unit, organization, installation, vessel, aircraft or vehicle. However, the rule provides that an examination made for the primary purpose of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings is not an inspection within the meaning of the rule.

The facts of this case convince me that the purpose of this urinalysis was not to determine or ensure the *security, military fitness,*

*or good order and discipline* of the members who were required to provide urine samples but rather to obtain evidence which might link individuals to the planting of marijuana in Major A's briefcase. There can be no doubt that the urinalysis was ordered as a direct result of the investigation into that event.

The mere fact that someone was suspected of attempting to implicate Captain A did not preclude the commander from conducting a legitimate inspection for the purpose of determining if members of his command were using contraband. However, Mil.R.Evid. 313(b) places a burden on the government to prove by *clear and convincing evidence* that there was an inspection within the meaning of the rule when, as in this instance, the examination was to locate weapons or contraband and the examination, which was not previously scheduled, was directed immediately following a report of a specific offense in the unit, organization, installation, vessel, aircraft or vehicle. While I am reluctant to conclude, as appellant's counsel asserts, that the purported inspection was a subterfuge for a warrantless search, I find the government has failed to meet its burden of showing by clear and convincing evidence that the results of the urinalysis were admissible as fruits of a valid inspection.

Having reviewed the trial judge's findings of fact, I find the facts which were used to conclude that this urinalysis was an inspection fall far short of the *clear and convincing* standard. I cannot read Mil.R.Evid. 313(b) as a license for a commander to use urinalysis testing whenever he may like in support of a criminal investigation. *United States v. Campbell*, 41 M.J. 177 (C.M.A.1994). Here, the persons chosen to participate in the search were those who worked in the same building as Major A. The stated purpose was "to clear the record" regarding the "finger pointing" in connection with the drug incident involving Major A. Of the 79 persons chosen to participate in the urinalysis, 20 were "no shows" for the urinalysis. None of the "no shows" were ever tested. In my view, these facts are not consistent with a valid inspection but rather consistent with a

desire to obtain evidence on or clear a group of possible suspects.

I believe the result I would reach is consistent with this Court's decision in *United States v. Parker*, 27 M.J. 522 (A.F.C.M.R. 1988). The parallels between that case and this one are startling. In *Parker*, the members of the carpentry shop were scheduled for urinalysis testing after a marijuana butt was found in the parking lot used by personnel who worked in the shop. The commander was concerned about rumors and jokes about chronic drug use by those assigned to that shop. Only 12 of the 20 assigned members were present and scheduled for testing. Although Parker, who tested positive, was never a suspect, our Court held there was no valid inspection because the commander excused some members of the selected unit from having to provide urine samples.

I cannot rationalize a different result in this case from the one our Court reached in *Parker*. The following observations by Senior Judge Lewis in *Parker* are no less applicable today and are worth repeating:

We interpret Mil.R.Evid. 313(b) as we find it, not as we might like it to be. There is, admittedly, a built in anomaly in the rule. Roughly stated, urinalysis evidence derived from a unit inspection becomes admissible in courts-martial only when the inspection was not directed for the primary purpose of obtaining such evidence. However, the lesson to be drawn from this case is not that commanders should endeavor to testify more circumspectly. If we were to suggest this, we would be doing a major disservice to all who read our words. This case illustrates that the rule contains a triggering mechanism which imposes a burden of proof on the government that can be difficult to overcome. Inspections must be conducted in such a manner as to avoid this pitfall if evidence is to be preserved for possible courts-martial

Finally, and for the purpose of any further appellate review, we find by the clear and convincing weight of the evidence that the appellant was neither specifically suspected of drug abuse nor was he viewed by command authorities as a target of the examination. This was a point that the

government stressed at the trial level, but a matter we do not feel is dispositive of the issue in this case. As we interpret Mil. R.Evid. 313(b), a commander need not go so far as to single out specifically identified suspects for testing to raise an inference that an examination for evidence rather than an inspection has been directed.

*Parker* at 528.

Additionally, I dissent from the majority's conclusion that the military trial judge did not err by granting a prosecution motion to exclude any evidence of a previous attempt of an unknown person to plant drugs on a person who worked in the same building as the appellant. At trial, appellant relied on the defense of an unknowing ingestion. The government was notified of his intent to raise the defense. Appellant sought to call the OSI agent who was investigating the incident involving Major A in support of his unknowing ingestion defense. The military trial judge ruled that the testimony of the OSI agent, even if viewed as minimally relevant, might confuse the issue before the Court and waste its time and, therefore, should be excluded.

Under the facts of this case, I believe the exclusion of the OSI agent as a defense witness was error. I conclude the testimony of the OSI agent would have been relevant to appellant's defense. The weight given to the testimony was a matter for the members to decide. I disagree that the testimony would have been confusing or a needless waste of time. An accused who relies upon unknowing ingestion as a defense to evidence of drug use derived from urinalysis testing has a very, very difficult task of convincing the factfinders that the defense has merit. Every accused is entitled to his day in court and should in the exercise of his due process right be afforded great latitude in presenting a defense. Basic fairness suggests to me that this appellant should have been allowed to present to the jury the information concerning the recent planting of marijuana in his building and to make the argument that the same individual may somehow have been responsible for his unknowing ingestion of the drug he was charged with using.