In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3739

United States of America,

Plaintiff-Appellee,

v.

Frank W. Simmons,

Defendant-Appellant.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 CR 122--Rudolph T. Randa, Judge.


Argued March 29, 2000--Decided June 13, 2000


Before Flaum, Ripple and Kanne, Circuit Judges.

Kanne, Circuit Judge.  Pursuant to a plea agreement, Frank Simmons agreed to cooperate with the government and testify at the trial of Dwayne Reed. Simmons testified at Reed's trial, which ended in a mistrial in January 1999. For his cooperation, Simmons received a six-level downward departure from the applicable sentencing range of the Sentencing Guidelines, resulting in a 55-month decrease in his sentence.

When Reed was retried, the district court ordered Simmons to testify again. Simmons refused to testify in the second trial, claiming that the government had reneged on a commitment made at his sentencing to grant him additional time off his sentence for his continued cooperation. The district court held Simmons in contempt for his refusal to testify, and found him guilty of criminal contempt at a bench trial in September 1999. At sentencing, the district court departed eight levels upward from the applicable Guidelines sentencing range, increasing his sentence from the range of 18-24 months to 46-57 months, then sentenced him to 57 months. Simmons appeals the district court's denial of his motion to dismiss the criminal contempt charge on the basis of Simmons's "good faith" defense and the district court's decision to depart from the applicable sentencing range. We affirm the decisions of the district court.

## I. History

Simmons was arrested on July 2, 1998, shortly after he and two other men robbed a First Municipal Credit Bank in Milwaukee, Wisconsin. After his arrest, Simmons made a statement to authorities pursuant to a proffer agreement in which he provided information about individuals with whom he had previously performed bank robberies. One of these robberies was committed at Educator's Credit Union in Milwaukee on September 8, 1997, with the aid of two other men, one of whom was Dwayne Reed. During this robbery, Reed controlled the lobby by brandishing a weapon, while Simmons hurdled the bank counter and gathered money from the tellers.

Simmons pleaded guilty on November 17, 1998, to the First Municipal Credit Bank robbery pursuant to a plea agreement with the government. The plea agreement required Simmons to cooperate "fully and completely" with the government's prosecution of the accomplices whom Simmons named in his proffer. While awaiting his own sentencing, Reed was arrested, and Simmons was called to testify as a prosecution witness at Reed's trial. Simmons testified against Reed, but the trial ended in a hung jury and a mistrial was declared on January 6, 1999.

On March 24, 1999, Simmons was sentenced for his own bank robbery conviction. Pursuant to the plea agreement, the government requested that Simmons receive a six-level downward departure from the applicable sentencing range based on the substantial assistance that he provided to the government. The district court granted the government's request and departed six levels downward from the applicable sentencing range, reducing the range from 151-188 months to 92-115 months. The court sentenced Simmons to 96 months in prison followed by three years supervised release. At the sentencing hearing, the government noted that the Reed prosecution resulted in a mistrial and suggested that it would call Simmons again as a witness in the retrial of Reed. Counsel for the government stated that, if Simmons continued to testify truthfully and reliably, "I anticipate there would be a further motion to this court," apparently to reconsider Simmons's sentence, at which point the government felt that "[Simmons] would be entitled to additional credit."

Dwayne Reed's retrial began on June 7, 1999. By this time, however, Simmons no longer wanted to testify against Reed. Despite Simmons's wishes to the contrary, the district court ordered Simmons to testify. Simmons initially refused to testify

and asked to speak with his attorney. The district court warned Simmons that he could be found in contempt on the basis of his refusal to testify and subjected to additional penalties. After speaking with his client, Simmons's attorney, Scott Phillips, asked the government whether Simmons would be entitled to additional credit in exchange for his testimony. The government responded that Simmons would not receive additional credit and that there would be "no deal" at that point. Simmons believed that by this action, the government had reneged on the plea agreement, and he reiterated his refusal to testify. The district court repeated that Simmons would be found in contempt if he refused to testify, but Simmons refused. On this basis, the government asked that Simmons be declared an unavailable witness, and Simmons's testimony from the first trial was read into evidence at the Dwayne Reed retrial. After his refusal to testify at the retrial, Simmons wrote a letter to Reed informing Reed that he had refused to testify or cooperate with the government in Reed's prosecution. Reed presented this letter at the retrial to dispute the credibility of Simmons's testimony. This letter stated in part: "Say man check this out. I told them people fuck that shit. . . . never can I help them people take your life like that. . . . Wayne, like I said fuck them honkies I told them people I aint with it and that's for real. Take care." The jury found Reed guilty of bank robbery.

On June 16, 1999, the district court certified Simmons for contempt and set a date for a jury trial. Shortly thereafter, Simmons filed a motion to dismiss the criminal contempt charge because his refusal to testify stemmed from his good faith belief that the government had reneged on their plea agreement. Immediately prior to trial, the government moved in limine to prevent Simmons from presenting evidence of this good faith defense. The district court found that its order to testify had been clear and that Simmons had not indicated any inability to comply. On this basis, the court found that the good faith defense had no merit as a matter of law, and the court granted the government's motion in limine and denied Simmons's motion to dismiss. Simmons then waived his right to jury trial. On September 2, 1999, the district court conducted a bench trial, and Simmons was found guilty of criminal contempt.

Simmons was sentenced on October 15, 1999. At sentencing, the district court accepted the computation of the pre-sentencing report ("PSR"), which applied United States Sentencing Guidelines sec. 2J1.5(a), failure to appear as a material witness (as directed by sec.sec. 2X5.1 and

2J1.1), and sec. 2J1.5(b), substantial interference with the administration of justice, to reach a total offense level of nine. Simmons's criminal history category was V, which with his total offense conduct, created an applicable Guidelines range of 18-24 months. The government requested that the district court depart upward from the applicable range because Simmons's knowing refusal to testify took his conduct outside the heartland of conduct contemplated by sec. 2J1.5(a). The district court agreed, and found that Simmons's refusal to testify, as well as his change of heart evidenced by his letter to Reed, removed Simmons's conduct from the range of activity contemplated by the Guidelines. Accordingly, the court determined that an upward departure in the total offense level was appropriate, and the court enhanced Simmons's total offense level eight levels, increasing the applicable sentencing range to 46 to 57 months. The court sentenced Simmons to 57 months imprisonment, to be served consecutively to his term of imprisonment for bank robbery.

II.  Analysis

On appeal, Simmons raises two issues. First, he contends that the court erred in denying his motion to dismiss the criminal contempt charge on the basis of his good faith defense and in granting the government's motion in limine, which denied Simmons the right to raise this defense at trial. Second, he argues that the court erred in departing upward from the applicable sentencing range. We review de novo the district court's denial to allow a defendant to raise a proffered defense, a question of law. See United States v. Santiago-Godinez, 12 F.3d 722, 726 (7th Cir. 1993). We review a district court's decision to depart for abuse of discretion and accept the findings of fact underlying such a departure unless clearly erroneous. See United States v. Cruz-Guevara, 209 F.3d 644, 647 (7th Cir. 2000); United States v. Wilke, 156 F.3d 749, 753 (7th Cir. 1998). A district court's determination of the extent of a departure is discretionary, see United States v. Leahy, 169 F.3d 433, 445 (7th Cir. 1999), so we review this determination for abuse of discretion. "We will uphold the extent of the departure taken as long as it is reasonable and adequately reflects the structure of the Guidelines." United States v. Hogan, 54 F.3d 336, 341 (7th Cir. 1995).

A.  Motion to Dismiss

Criminal contempt is used to punish disobedience of a court order, and courts often find a defendant in contempt when he willfully refuses to comply with a valid court order. See, e.g., United States v. Marquardo, 149 F.3d 36, 39-40

(1st Cir. 1998). Simmons does not dispute that the district court issued an order that he testify or that he refused to testify. Instead, Simmons claims that he refused to testify in the good faith belief that the government had reneged on their plea agreement. Because a good faith effort to comply with a court order negates willfulness, an element of criminal contempt that must be proven beyond a reasonable doubt, a defendant may present evidence of good faith as a defense to a criminal contempt charge. See United States v. Monteleone, 804 F.2d 1004, 1011 (7th Cir. 1986); United States v. Ray, 683 F.2d 1116, 1126 (7th Cir. 1982).

However, Simmons fails to present evidence that would demonstrate good faith. A defendant can show good faith by providing evidence that his noncompliance did not constitute a refusal or resulted from the indefiniteness of the district court's order or some other factor rendering the defendant incapable of performing the order. See Ray, 683 F.2d at 1126. The district court's order to testify was quite clear, however, and the court reiterated both its order and the consequences of Simmons's refusal several times. Simmons presents no evidence that he was incapable of testifying, nor can we adduce any factor that may have rendered him incapable of testifying. Simmons refused to comply with a clear court order, and the court correctly found him in contempt.

Simmons argues that his testimony should not have been compelled because of the alleged breach of the plea agreement, but this argument is without merit. "[T]he public is entitled to any man's evidence concerning criminal acts committed by another." United States v. Patrick, 542 F.2d 381, 388 (7th Cir. 1976). If the court felt that Simmons's testimony was necessary to the Reed retrial, the court was empowered to compel his testimony. See id. Even assuming arguendo that the government breached the plea agreement, this breach would not, as Simmons implies, authorize him to refuse the court's order to testify. Instead, Simmons should have testified before the court and then brought an action against the government to enforce the terms of the plea agreement. For this reason, the evidence of breach that Simmons wished to provide was irrelevant. The district court properly refused to allow Simmons to raise a good faith defense on this evidence and properly denied Simmons's motion to dismiss. Simmons briefly argues that his consultation of counsel immunizes him from contempt, but "an attorney may not exculpate his client of contempt by advising him to disobey an order of the court." Monteleone, 804 F.2d at 1011.

B.   Sentencing Departure

     Guidelines sec. 2J1.1 requires courts sentencing a defendant for contempt to apply sec. 2X5.1 "[b]ecause misconduct constituting contempt varies significantly." U.S.S.G. sec. 2J1.1 application note 1. Guidelines sec. 2X5.1 directs courts to apply the "most analogous offense guideline." U.S.S.G. sec. 2X5.1. In this case, the district court concurred with the recommendation of the PSR to apply Guidelines sec. 2J1.5, failure to appear as a material witness, as the most analogous offense guideline. Guidelines sec. 2J1.5 provides a base offense level of six when a witness has failed to appear for a felony trial, U.S.S.G. sec. 2J1.5(a)(1), and directs courts to increase by three levels if the failure to appear resulted in "substantial interference with the administration of justice." U.S.S.G. sec. 2J1.5(b).

     Simmons does not dispute that sec. 2J1.5 was the most analogous offense guideline, and we have previously held that sec. 2J1.5 is most closely analogous to refusal to comply with an order to testify. See United States v. Ortiz, 84 F.3d 977, 981-82 (7th Cir. 1996). However, the district court felt that Simmons's refusal to testify was a factor that removed his conduct from the heartland of conduct contemplated by the Sentencing Commission and departed upward an additional eight levels, to produce a total offense level of seventeen. Simmons appeals this departure, claiming that a refusal to testify on the grounds of a breach of a plea agreement does not constitute a factor that would remove Simmons's conduct from the heartland established for sec. 2J1.5.

     This court employs a three-part approach in reviewing a district court's decision to depart upward from the applicable Guideline range. See Leahy, 169 F.3d at 439. First, we determine whether the grounds for departure were appropriate. See id. Second, we determine whether the court committed any clear errors in its findings of fact regarding the departure. See id. Third, we consider whether the extent of the departure was reasonable. See id.

     A district court may depart from the applicable Guidelines range and sentence a defendant outside that range only if "the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. sec. 5K2.0 (quoting 18 U.S.C. sec.

3553(b)). In Koon v. United States, the Supreme Court explained this requirement by noting that the Sentencing Commission intended "the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." 518 U.S. 81, 93 (1996) (quoting U.S.S.G. ch. 1 pt. A, intro. cmt 4(b)). In an "atypical" case, where "a particular guideline linguistically applies but where conduct significantly differs from the norm" a court is permitted to depart from the applicable Guidelines sentencing range, U.S.S.G. ch. 1 pt. A, intro. cmt. 4(b).

In the instant case, the district court felt that Simmons's outright refusal to testify, coupled with his change of heart as to his decision to testify, served to distinguish Simmons's behavior from other behavior within the heartland of sec. 2J1.5. Guidelines sec. 2J1.5 applies in all cases where a material witness, for any reason, fails to testify in a criminal trial. This guideline contemplates a broad variety of conduct within its heartland. Nonetheless, the district court did not err in determining that Simmons's conduct went beyond the level of conduct contemplated by the Sentencing Commission when it promulgated sec. 2J1.5.

Simmons participated in the crimes for which Reed was tried, and his cooperation enabled the government to indict Reed. For this cooperation and his testimony at Reed's trial, Simmons was given a significantly reduced sentence on his own bank robbery conviction. After he received his sentence reduction, Simmons had a change of heart, writing to Reed that "I told them people fuck that shit . . . never can I help them people take your life like that. . . . I told them people I aint with it and that's for real." However, even Simmons's protestations to Reed proved inaccurate, for Simmons would have been willing to testify at Reed's retrial, had the government agreed to provide Simmons with extra time off his sentence. The government refused to accede to this demand, and Simmons petulantly refused to testify, despite a clear court order compelling him to do so. In addition, Reed presented Simmons's letter at his retrial in an attempt to compromise the credibility of Simmons's previous testimony, which had been read into the record. In this context, Simmons's refusal to testify demonstrates many elements of obstruction, and his conduct exceeds the type of absenteeism contemplated by the Sentencing Commission in sec. 2J1.5. Therefore, we find that the court's decision to depart was reasonable under the circumstances.

Simmons does not contend that the district court's findings of fact were in error, so we must determine only whether the extent of the court's upward departure was reasonable. Sentencing courts need not adhere to a mathematic approach in determining the extent of a departure. Instead, "[t]he law merely requires that district judges link the degree of departure to the structure of the Guidelines and justify the extent of the departure taken." United States v. Scott, 145 F.3d 878, 886 (7th Cir. 1998). Here, the district court determined that Simmons's conduct merited an eight-level departure upward, and this determination is articulated within the methodology of the Guidelines and linked to the general structure of the Guidelines, which applies a higher total offense level to obstructive conduct like Simmons's. See, e.g., U.S.S.G. sec. 2J1.2 (applying base offense level of twelve for obstruction of justice). In addition, the court found that Simmons's actions constituted a repudiation of his previous agreement to cooperate with the government. In return for his cooperation at Reed's first trial, Simmons's sentence was reduced by at least 55 months. On this basis, the court felt that a sentence of 57 months was appropriate because it took away the "benefit" conferred upon the defendant by the government. The district court did not abuse its discretion in making this determination.

## III. Conclusion

The district court did not err in refusing to allow Simmons to present his good faith defense to criminal contempt, nor did the court abuse its discretion in its departure from the applicable Guidelines range. Therefore, the decisions of the district court are Affirmed.