## UNITED STATES

v.

## Jayson M. BARNES, Machinist's Mate Fireman Apprentice (E–2), U.S. Navy.

### NMCCA 200302062.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 9 Sept. 2003.

Decided 14 March 2005.

LtCol Alfred Lechner, USMCR, Appellate
Defense Counsel.

Maj J.Ed. Christiansen, USMC, Appellate
Defense Counsel.

Lt Brian Mizer, JAGC, USNR, Appellate
Defense Counsel.

Maj Raymond E. Beal II, USMC, Appellate Government Counsel.

Lt Deborah S. Mayer, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Chief Judge, HARRIS, and HEALEY, Appellate Military Judges.

HARRIS, Judge:

A special court-martial composed of a military judge, sitting alone, convicted the appellant, pursuant to his pleas, of a 52–month unauthorized absence terminated by apprehension, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. The appellant was sentenced to confinement for 39 days,[1] reduction to pay grade E–1, forfeiture of $767.00 pay per month for 12 months, and a bad-conduct discharge. The convening authority approved the adjudged sentence and, except for the bad-conduct discharge, ordered it executed. There was no pretrial agreement.

We reviewed the record of trial, submitted without specific assignment of error. Following our review, we specified two issues for briefing by appellate counsel: (1) Whether the military judge erred when he granted the Government's motion *in limine* to preclude the appellant from raising the affirmative defense of duress; and, (2) Whether the appellant's plea of guilty to a 52–month unauthorized absence terminated by apprehension was provident. Upon receipt of briefs by appellate counsel, we again have reviewed the record of trial, the appellant's briefs on the two specified issues and a supplemental assignment of error asserting that the military judge's comments before pronouncement of sentence displayed a deep-seated

antagonism that deprived the appellant of his right to a fair trial, the Government's response, and the appellant's reply.

We conclude that the military judge erred when he granted the Government's motion *in limine* to preclude the affirmative defense of duress, after having ruled that the charged offense of desertion and the lesser included offense of unauthorized absence are continuing offenses and were not complete when the appellant left his ship with the intent to permanently remain away. We also conclude that the military judge conducted an insufficient providence inquiry when he failed to inquire into whether the appellant's unauthorized absence was caused by anything that forced him to leave his ship. Further, we conclude that the military judge failed to inquire as to whether contact with an uncle, who was an active duty U.S. Navy servicemember assigned to the Military Entrance Processing Station (MEPS) located in the appellant's hometown of Tampa, Florida, effectively terminated the appellant's unauthorized absence prior to the alleged apprehension. Finally, we conclude that before the military judge's pronouncement of sentence, he directed comments to the appellant that, while injudicious, were not prejudicial, unethical, or based on any personal animosity or bias. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c). We shall take corrective action in our decretal paragraph.

**Background**

The appellant, having successfully completed Machinist's Mate "A" School after Navy basic training, reported for duty on board the USS JOHN F. KENNEDY (CV 67). He was assigned to the forward propulsion room, commonly known on board the ship as "the pit." Record at 22. According to the appellant, during his first three weeks on board the USS JOHN F. KENNEDY, he and two other recently arrived Sailors were made the subject of seven or eight sessions of physical assaults by other Sailors assigned to the pit. After being told that the sessions were an initiation to the ship, the appellant initially treated these illegal hazing sessions as "akin to" the "pinning" on of blood wings or the "tacking" on of a crow. Appellant's Brief of 15 Jun 2004 at 2 (citing Record at 23). According to the appellant, he would often be

---

1. Time actually served in pretrial confinement.

punched and dragged across the grating in the deck, with the sessions lasting up to half an hour. The beatings left the appellant with bruises on his chest and back and, on one occasion, caused him to "urinate blood." Record at 38.

When the beatings and abuse did not stop, the appellant informed his supervising petty officers and, when the sessions continued to occur, he informed his division chief petty officer and, still later, his division officer. Two days later, the appellant entered a period of unauthorized absence when he left the ship without permission after it appeared to him that the division just "swept it under the rug" and that "nothing changed." *Id.* at 24. The appellant went home to Tampa, Florida, where he remained for several weeks. The appellant's father and uncle, both active duty U.S. Navy servicemembers, learned of the appellant's unauthorized absence status and convinced him to return to the USS JOHN F. KENNEDY.

The appellant reported to both the ship's Master–at–Arms and his division officer when he returned. The appellant's division officer informed the appellant that he would be returning to the pit, and that he would be billeted with the same division berthing shipmates as before. According to the appellant, when he arrived at berthing, some of the Sailors who had previously assaulted him were waiting for him. The appellant was told, "It's going to get better" and "tomorrow is a whole new day." *Id.* at 32. The appellant understood these statements to mean that the next day he would be beaten worse than before. That day, 30 March 1999, the appellant again left the USS JOHN F. KENNEDY without authority. He again went home to Tampa, Florida. While the appellant was home, he had numerous contacts with his active duty uncle at the MEPS. According to the appellant, his uncle contacted the USS JOHN F. KENNEDY a number of times concerning the appellant's status. On 31 July 2003, the appellant was stopped by a Tampa police officer for a minor traffic infraction. The Tampa police officer subsequently placed the appellant in custody for desertion from the Navy.

## Government Motion *In Limine* to Preclude Affirmative Defense of Duress

In response to this court's first specified issue of whether the military judge erred when he granted the Government's motion *in limine* [2] to preclude the appellant from raising the affirmative defense of duress, the appellant asserts that the military judge's refusal to allow him to present evidence of duress was error not harmless beyond a reasonable doubt. The appellant avers that we should set aside the findings and the sentence and authorize a rehearing. We agree.

■ An affirmative defense negates guilt by canceling out the existence of some required element of the offense or by showing some justification or excuse that bars the imposition of liability. *Willenbring v. Neurauter*, 48 M.J. 152, 176 (C.A.A.F.1998)(citing W. LaFave & A. Scott, *Substantive Criminal Law* § 1.8(c) at 71 (1986)); *see also* RULE FOR COURTS-MARTIAL 916, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.). R.C.M. 916(h) provides that:

> It is a defense to any offense except killing an innocent person that the accused's *participation* in the offense was *caused by a reasonable apprehension* that the accused or another innocent person would be immediately killed or would *immediately suffer serious bodily injury* if the accused did not commit the act. *The apprehension must reasonably continue throughout the commission of the act.* If the accused has any reasonable opportunity to avoid committing the act without subjecting the accused or another innocent person to the harm threatened, this defense shall not apply.

(Emphasis added). An accused is not entitled to claim the defense of duress "unless he [can] demonstrate that 'given the imminence of the threat, violation of (the law) was his only reasonable alternative.'" *United States v. Tokash*, 282 F.3d 962, 969 (7th Cir.2002)(quoting *United States v. Bailey*, 444 U.S. 394, 411, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)).

---

2. Appellate Exhibit I.

■ For the affirmative defense of duress to apply, the offense committed must have been of a lesser magnitude than the harm threatened which produced in the accused a reasonable fear of immediate or imminent death or serious bodily harm. *United States v. Rockwood,* 52 M.J. 98, 112–13 (C.A.A.F.1999); *see also United States v. Roberts,* 14 M.J. 671, 672–73 (N.M.C.M.R.1982)(finding an immediate threat of an initiation ceremony where the accused was going to be "greased" and "inked" by members of the ship's crew was sufficient justification for a reasonably grounded fear of serious bodily injury), *rev'd in part on other grounds,* 15 M.J. 106 (C.M.A.1983)(summary disposition). The duress also must have consisted of unlawful threatening conduct from a human being. *United States v. Washington,* 57 M.J. 394, 398 (C.A.A.F.2002). Unsubstantiated fear of injury or harm is not sufficient to establish duress as an affirmative defense to the criminal act committed by an accused. *United States v. DeHart,* 33 M.J. 58, 61 (C.M.A.1991)(citing *United States v. Jennell,* 749 F.2d 1302, 1305 (9th Cir.1984)). Further, the coercion imposed must be by a third party and not by the accused or another innocent person. *United States v. Collins,* 37 M.J. 1072, 1073–74 (N.M.C.M.R.1993)(citing *United States v. Mitchell,* 34 M.J. 970, 972 (A.C.M.R.1992)). When there is some evidence that the accused acted under duress, the prosecution has the burden of proving beyond a reasonable doubt that the affirmative defense of duress does not exist. *United States v. Vasquez,* 48 M.J. 426, 430 (C.A.A.F.1998)(citing R.C.M. 916(b)).

Before the entry of pleas, an Article 39(a), UCMJ, session was held concerning the Government's motion *in limine* to preclude the appellant from presenting evidence of duress during the defense case on the merits. After concluding that the offenses of desertion and unauthorized absence terminated by apprehension are continuing offenses, the military judge found that because the appellant did not continually fear for his safety during the entirety of his absence from the ship, he failed to establish a necessary element of the affirmative defense of duress. Whereupon, the military judge granted the Government's

motion *in limine* and refused to allow the appellant to assert the affirmative defense of duress on the merits. Record at 55–56; *see* R.C.M. 906(b)(13). The military judge also ruled that the issue of duress was preserved for appeal. Record at 59.

The appellant's subsequent plea of guilty to the lesser offense of unauthorized absence terminated by apprehension ordinarily would have waived any claimed affirmative defense of duress. *See* R.C.M. 905(e); R.C.M. 910(j). However, the military judge's unchallenged ruling that the issue of duress was preserved for appeal became the law of the case and thereby conditioned the appellant's plea. *See United States v. Grooters,* 39 M.J. 269, 272–73 (C.M.A.1994)(citing *United States v. Sales,* 22 M.J 305, 307 (C.M.A.1986)).

■ The trial judge's conclusions of law as to the legal sufficiency of a proffered affirmative defense are questions of law, which we review *de novo. United States v. Roberts,* 59 M.J. 323, 326 (C.A.A.F.2004); *United States v. Simmons,* 215 F.3d 737, 741 (7th Cir.2000)(citing *United States v. Santiago-Godinez,* 12 F.3d 722, 726 (7th Cir.1993)). In reviewing findings of fact made by the military judge, we apply the "clearly erroneous" standard. *United States v. Martin,* 56 M.J. 97, 105 (C.A.A.F.2001). Furthermore, a military judge abuses his discretion when he is incorrect about the applicable law or when he improperly applies the law. *Roberts,* 59 M.J. at 326.

■ When a military judge commits error of a constitutional dimension, reversal is required if the error was not harmless beyond a reasonable doubt. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Military courts of criminal appeals recognize that an accused has a constitutionally protected right to present legally and logically relevant evidence at trial. *United States v. Shover,* 42 M.J. 753, 755 (A.F.Ct.Crim.App.1995)(citing *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)), *aff'd,* 45 M.J. 119 (C.A.A.F.1996). When a military judge incorrectly refuses to permit the accused to present evidence of an affirmative defense, he denies the accused his rights to constitu-

tional due process and to a fair and impartial trial. *United States v. Tulin*, 14 M.J. 695, 699 (N.M.C.M.R.1982).

Nonetheless, where the evidence proffered by an accused in support of an affirmative defense in response to a Government motion *in limine* is insufficient as a matter of law to support the affirmative defense, a pretrial ruling precluding the presentation of the defense at trial is appropriate. *Santiago–Godinez*, 12 F.3d at 727. To entitle the accused to present an affirmative defense to the trier of fact, his proffer must meet the minimum standard as to each element of the defense, so that if the trier of fact finds it to be true, it would support the defense. *Tokash*, 282 F.3d at 967 (citing *Santiago–Godinez*, 12 F.3d at 727). "In so doing the [accused] must present 'more than a scintilla of evidence' that demonstrates that he can satisfy the legal requirements for asserting the proposed defense." *Id.* (quoting *United States v. Blassingame*, 197 F.3d 271, 279 (7th Cir.1999)).

We conclude that the military judge erred and that his error was not harmless beyond a reasonable doubt. The military judge erroneously concluded that the offenses of desertion and unauthorized absence were continuing offenses. They are not. *United States v. Ray*, 22 C.M.R. 168, 169, 1956 WL 4752 (C.M.A.1956)(offense of desertion is complete when accused leaves without authority with intent to remain away permanently); *United States v. Emerson*, 1 C.M.R. 43, 46, 1951 WL 1508 (C.M.A.1951)(offense of unauthorized absence is not a continuing offense); *United States v. Gonzalez*, 39 M.J. 742, 748 (N.M.C.M.R.1994)("Desertion, like its lesser form, unauthorized absence, is an instantaneous offense."), *aff'd*, 42 M.J. 469 (C.A.A.F.1995); *see also* MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶¶ 9c(1)(a) and 10c(8). Based on this erroneous belief, the military judge incorrectly ruled that the appellant was not entitled to present the defense of duress because he did not remain in continuous apprehension of serious bodily injury throughout his unauthorized absence and should have taken further measures to end his unlawful conduct.

We also conclude that the military judge implicitly found that the alleged threatening conduct on board the USS JOHN F. KENNEDY did, in fact, take place. Record at 89 ("I don't doubt that [the conduct] took place."). We can only conclude that the military judge accepted as fact the unrebutted testimony of the appellant during the Article 39(a), UCMJ, session on the Government's motion *in limine:* (1) that he had suffered serious bodily injury on at least one of the seven or eight occasions in which assaults occurred at the hands of his shipmates; and (2) that these assaults occurred in the forward propulsion room on the USS JOHN F. KENNEDY.

Therefore, we conclude that the military judge erred as a matter of law when he granted the Government's motion *in limine*. We hold that the military judge's failure to afford the appellant the opportunity to defend himself against the charge before he entered pleas was a denial of due process of law.

Accordingly, we shall take corrective action below. In addition, even if we did find that the military judge's error was harmless beyond a reasonable doubt, we would, nonetheless, grant relief under the second specified issue.

### Providence Inquiry

In response to this court's second specified issue of whether the appellant's plea of guilty to a 52–month unauthorized absence terminated by apprehension is provident, the appellant asserts that his plea is improvident. The appellant avers that we should set aside the findings and the sentence and authorize a rehearing. We agree.

A military judge may not accept a guilty plea to an offense without inquiring into its factual basis. Art. 45(a), UCMJ, 10 U.S.C. § 845(a); *United States v. Care*, 40 C.M.R. 247, 253, 1969 WL 6059 (C.M.A.1969). Before accepting a guilty plea, the military judge must explain the elements of the offense and ensure that a factual basis for the plea exists. *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F.1996); *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980).

"Mere conclusions of law recited by [the] accused are insufficient to provide a factual basis for a guilty plea." *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F.1996)(citing *United States v. Terry*, 45 C.M.R. 216, 217, 1972 WL 14158 (C.M.A.1972)). The accused "must be convinced of, and able to describe all the facts necessary to establish guilt." R.C.M. 910(e), Discussion. Acceptance of a guilty plea requires the accused to substantiate the facts that objectively support his plea. *United States v. Schwabauer*, 37 M.J. 338, 341 (C.M.A.1993); *see* R.C.M. 910(e).

■ The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). Such rejection must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty, R.C.M. 910(j), and the only exception to the general rule of waiver arises when an error materially prejudicial to the substantial rights of the appellant occurs. Art. 59(a), UCMJ.

■ Additionally, we note that a military judge has wide discretion in determining that there is a factual basis for the plea. *United States v. Roane*, 43 M.J. 93, 94–95 (C.A.A.F. 1995). Further, military courts of criminal appeals should not find error in a military judge's acceptance of a guilty plea simply because there is a "mere possibility of conflict." *United States v. Logan*, 47 C.M.R. 1, 3, 1973 WL 14641 (C.M.A.1973); *United States v. Bush*, 57 M.J. 603, 603–04 (N.M.Ct. Crim.App.2002). However, inconsistencies and apparent defenses must be resolved or the military judge must reject the guilty plea. *United States v. Jemmings*, 1 M.J. 414, 418 (C.M.A.1976); *United States v. Olinger*, 47 M.J. 545, 548 (N.M.Ct.Crim.App. 1997), *aff'd*, 50 M.J. 365 (C.A.A.F.1999).

■ In the case before us the appellant pled guilty to the offense of unauthorized absence terminated by apprehension. The elements of the offense are:

(a) That the [servicemember] absented himself or herself from his or her unit, organization, or place of duty at which he or she was required to be;

(b) That the absence was without authority from anyone competent to give him or her leave;

(c) That the absence was for a certain period of time; and

(d) That the absence was terminated by apprehension.

MCM, Part IV, ¶ 10b(3). The term "apprehension" means that the appellant's return to military control was involuntary. *United States v. Fields*, 32 C.M.R. 193, 197, 1962 WL 4477 (C.M.A.1962). This means that neither the appellant nor persons acting at the appellant's request initiated his return. *Id.*

■ The military judge accurately listed the elements and defined the terms contained in the elements for the offense. The appellant indicated an understanding of the elements of the offense and the legal definitions and stated that the elements correctly described the offense he committed. Nonetheless, the military judge did not conduct a thorough inquiry into the providence of the appellant's guilty plea. The appellant testified as to the facts concerning the reasons for his unauthorized absence while testifying on the issue of duress during the motions stage of his court-martial. During the providence inquiry, however, the military judge did not ask the appellant any questions concerning the issue of duress or the possibility of early termination of his unauthorized absence.

The record clearly shows that the military judge failed to ascertain whether the appellant believed his unauthorized absence was caused by duress. Given the appellant's extensive testimony during the motions stage of the court-martial, we conclude that the military judge erred by failing to inquire into whether the appellant believed his unauthorized absence was justified due to duress. We also conclude that the military judge erred when he failed to inquire as to whether the appellant believed his dealings with his uncle, an active duty servicemember serving at the Tampa MEPS, who was senior to the appellant and in a position capable of exercising authority and control over the appellant, terminated the appellant's unauthorized ab-

sence. *See United States v. Pettis,* 12 M.J. 616, 618 (N.M.C.M.R.1981).

Accordingly, we conclude that the failure of the military judge to sufficiently inquire into the defense of duress and the possible early termination renders the appellant's guilty plea improvident. As such, we shall take corrective action below.

### Judicial Comments

In the appellant's supplemental assignment of error, he asserts that the military judge's comments before the pronouncement of sentence displayed a deep-seated antagonism that deprived the appellant of his right to a fair trial. The appellant avers that this court should set aside the findings and sentence and dismiss the charge with prejudice. We disagree.

Prior to pronouncement of sentence in the appellant's case, the military judge directed the following comments to both the appellant and this court:

> Winston Churchill, when referring to Neville Chamberlain, who you should look up and learn a little about him, upon learning of his death said, "That the only guide to a man is the rectitude and sincerity of his actions."
>
> I have listened to a great many things today about the conduct that took place on the [USS JOHN F.] KENNEDY, and I don't doubt that it took place. It's shameful conduct and it's conduct which I've directed the United States to investigate, and they will use the good officers [sic] of the Naval Criminal Investigative Service to do that.
>
> Yet, at the same time, young man, you need to take responsibility for your own actions. As a result of my sentence today, you're going to leave the Navy and, in leaving the Navy, you have a life ahead of you. And every time someone strikes you, rather than cowering in a corner, you have to find the intestinal fortitude that's called upon by individuals to do the right thing.
>
> And remember always, "A coward dies a thousand times, a noble man but once."
>
> Accused and counsel, please rise.

Record at 89–90. The appellant opines that the military judge's statements are directly analogous to the impermissible statements made by the preliminary hearing judge in *Berger v. United States,* 255 U.S. 22, 28–29, 41 S.Ct. 230, 65 L.Ed. 481 (1921). In *Berger,* during the preliminary hearing portion of a trial of German–Americans for disloyalty to the United States, the preliminary hearing judge opined that he preferred a friend who was a bank robber and safe-blower over the defendant and the pacifists in the United States "who are against the United States and have the interests of the enemy at heart by defending that thing they call the Kaiser and his darling people." *Id.* at 29, 41 S.Ct. 230. We conclude that the facts in the *Berger* case are substantially different from the facts in the appellant's case.

 The appellant is correct that a basic requirement of due process under the Fifth Amendment of the United States Constitution is an accused servicemember's right to trial by an impartial military judge. *United States v. Wright,* 52 M.J. 136, 140 (C.A.A.F.1999)(citing *Ward v. Village of Monroeville,* 409 U.S. 57, 59, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972)). Further, a military judge should "'scrupulously avoid even the slightest appearance of partiality.'" *United States v. Watt,* 50 M.J. 102, 105 (C.A.A.F.1999)(quoting *United States v. Shackelford,* 2 M.J. 17, 19 (C.M.A.1976)). For an appellant to state a due process claim that a military judge was biased, however, he "must show either that actual bias existed, or that an appearance of bias created a conclusive presumption of actual bias." *United States v. Lowe,* 106 F.3d 1498, 1504 (10th Cir.1997). "There is a strong presumption that a [military] judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle, particularly when the alleged bias involves actions taken in conjunction with judicial proceedings." *United States v. Quintanilla,* 56 M.J. 37, 44 (C.A.A.F.2001). Any opinions formed by the trial judge on the basis of facts introduced during the course of the trial, however, "do not constitute bias or partiality, 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Id.* (quoting *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127

L.Ed.2d 474 (1994)). " 'When a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt' by the military judge's actions." *Id.* at 78 (quoting *United States v. Burton,* 52 M.J. 223, 226 (C.A.A.F.2000)). "On appeal, '[t]he test is objective, judged from the standpoint of a reasonable person observing the proceedings.' " *Id.*

 Further, this court will not hesitate to use its Article 66(c), UCMJ, authority in applying the law to guarantee that no judicial action before this court is tainted by bias, by lack of impartiality, or by any appearance thereof. At first blush, the military judge's statements can be equated with his implicitly calling the appellant a coward, and lecturing the appellant not to be a coward in the future. While the factual basis for this judgment is highly suspect, especially since the appellant tried to use his immediate chain of command to solve his problem, it does not display a deep-seated antagonism towards the appellant that made a fair judgment by the military judge impossible—especially in

light of the relatively lenient sentence that he imposed. While we find the military judge's comments to be injudicious,[3] we do not find them to be prejudicial, unethical, or based on any personal animosity or bias. Therefore, we decline to grant relief based on the appellant's supplemental assignment of error.

### Conclusion

Accordingly, we set aside the findings and sentence. A rehearing is authorized. The record of trial is returned to the Judge Advocate General of the Navy for transmission to an appropriate convening authority who may order a rehearing. If a rehearing is impractical, the convening authority must dismiss the charge.

Chief Judge DORMAN and Judge HEALEY concur.

---

**3.** Military judges would be well-served to refrain from *unnecessary* counseling of an accused servicemember during *any* stage of the trial.